UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RBS CITIZENS,

        Plaintiff,

                                    Case No. 13-12266
                                    HON. GERSHWIN A. DRAIN

vs.

PURTHER, *et. al.*,

        Defendants.

_____/

**<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#20]</u>**

**I.    INTRODUCTION**

On May 20, 2013, Plaintiff, RBS Citizens, filed the instant action alleging Defendants, Thomas Purther, David Rubin, and Anthony Purther ("the Guarantors"), breached a Guaranty Agreement ("the Guaranty") the parties entered into on March 21, 2003. Presently before the Court is Plaintiff's Motion for Summary Judgment [#20], filed on November 7, 2013. This matter is fully briefed and a hearing was held on February 10, 2014. For the reasons that follow, the Court will GRANT Plaintiff's Motion for Summary Judgment.

**II.    FACTUAL BACKGROUND**

Plaintiff is a national banking association and is the successor by merger to Charter One Bank ("Charter One").[1] On March 21, 2003, Charter One issued a mortgage loan in

---

[1] As the successor by merger to Charter One, RBS assumed all rights under the Port of Call Loan documents, including the Guaranty at issue.

the amount of $1,520,000.00 ("the Loan") to Dunes Associates, LLC, a Michigan Limited Liability Company ("the Borrower"). To induce Charter One to make the Loan and to secure repayment of the Loan, the Guarantors all executed and Delivered to Charter One a Guaranty dated March 21, 2003. The loan is evidenced by a Promissory Note (the "Note") also dated March 21, 2003.

Pursuant to the Note, the Loan matured and all unpaid principal, accrued and unpaid interest and additional sums became payable in full on April 1, 2013 ("the Maturity Date"). Under the Guaranty, the Guarantors irrevocably and unconditionally, jointly and severally, guaranteed to the Lender:

> A. the payment when due, whether by acceleration or otherwise, of the indebtedness owing pursuant to the terms of the Loan Documents (the "Indebtedness"); and
>
> B. the prompt and complete performance by Borrower of all undertakings, promises and agreements as contained in the Loan Documents (the "Obligations") other than the Indebtedness.
>
> C. Notwithstanding the above, Guarantors shall be limited to fifty percent (50%) of the outstanding Loan balance.

The Guaranty further states that:

> [t]his is a guaranty of payment and not of collection. Upon the occurrence of an Event of Default, Lender may make demand directly upon the Guarantors for the performance and payment of the above without making demand upon, or pursuing or exhausting any remedy, or instituting proceedings against Borrower or any other person, or against any assets of Borrower, or against any security held by Lender.

The Borrowers subsequently defaulted on the Loan. At the Maturity Date, the principal balance due on the Loan was $1,125,360.60, as well as $94,562.88 of accrued and unpaid interest and $60,855.98 of late charges were also due. On November 6, 2013,

with regular interest and default interest continuing to accrue at rates specified under the Note, the outstanding loan balance was determined to be $1,348,869.60.

Additionally, under the Guaranty, the Guarantors are responsible for the legal services and expenses incurred by RBS that are related directly to the enforcement of the Guarantors' obligations. As of November 1, 2013, that amount was determined to be $26,973.72. Additional interest, attorneys' fees and collections costs continue to accrue until the Loan is paid in full.

## III. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First*

*Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the defendant; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

      **B.**      **Breach of Contract**

A guaranty is "an enforceable undertaking or promise by one person collateral to a primary or principal obligation of another which binds the person making the promise to performance of the primary obligation in the event of nonperformance. The secondary party thus becomes primarily responsible for performance." *Angelo Iafrate Co. v. M & K Development Co.*, 80 Mich. App. 508, 514 (1978). Under Michigan law, the relationship between the parties to a guaranty is contractual in nature. *First Nat'l Bank v. Redford Chevrolet Co.*, 270 Mich. 116, 121 (1935); *Crown Life Ins. Co. v. Hicks*, No. 93-cv-71482, 1994 U.S. Dist. LEXIS 5562, *11 (E.D. Mich. Jan. 7, 1994).

To recover for breach of contract under Michigan law, the plaintiff must show: (1) the existence of a contract between the parties, (2) the terms of the contract, (3) that the defendants breached the contract, and (4) that the breach caused the injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815 (6th Cir. 1999). In the instant case, all of the *Webster* elements have been met. First, the contract is the Guaranty. Second, the Guarantors unconditionally, jointly and severally, guaranteed to Lender the payment of the Loan when due, specifically 50% of the outstanding Loan balance, and all of Lender's costs and expenses, including reasonable attorneys' fees incurred in the enforcement of the Guaranty. Third, the Borrower defaulted under the terms of the Note by failing to repay the Loan by the Maturity Date. The Borrower's failure to repay triggered the Guarantors'

obligations under the Guaranty. The Guarantors breached their obligations by failing to pay 50% of the outstanding Loan balance and other amounts due under the Guaranty. Fourth, as a result of the breach, Plaintiff has suffered damages. The Guarantors have breached their contract with Plaintiff.

### 1. Ambiguity

The Guarantors argue that the Guaranty is ambiguous as to how the phrase "outstanding Loan balance" is determined. While Plaintiff maintains the term is measured by the outstanding loan balance at the time of the loan maturity, Guarantors argue that there is nothing within the loan documents that defines this term or that ascribes any specific time or date of termination for that liability. Given that the Guarantors liability is limited to 50%, as opposed to a certain sum, they suggest it is reasonable to conclude there was no intent to have a specific time or dollar amount tied to their obligations. The Guarantors therefore assert that their liability is limited to 50% of any shortfall or deficiency the bank could not recover from the borrower.

Contrary to the Guarantors' argument, the guaranty is unambiguous. "A contract is ambiguous when two provisions 'irreconcilably conflict with each other,' or 'when [a term] is equally susceptible to more than a single meaning.'" *Coates v. Bastian Bros, Inc.,* 276 Mich. App. 498, 503 (2007). Under the Loan documents, the Guarantors became obligated to pay at the time of default, or on the Maturity Date. The Guaranty further states: "Lender may make demand directly upon the Guarantors...without making demand upon, or pursuing or exhausting any remedy...against Borrower...." Thus, the Guarantors' arguments concerning ambiguity are without merit. *See Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 467 (2003) ("[C]ourts cannot simply ignore portions of a contract...in order to

declare an ambiguity. Instead contracts must be 'construed so as to give effect to every work or phrase as practicable'"). Moreover, Guarantors have not had any difficulty interpreting "outstanding loan balance" in the past, as in their Answers they emphasized that the "guarantees speak for themselves." Here, the language of the Guaranty is clear. Therefore, the Court must interpret and enforce the contract as written.

### 2. Parol Evidence

The Guarantors argue they may use extrinsic evidence in support of their argument because there are contractual ambiguities. *Klapp*, 468 Mich. at 497. Consequently, they rely on the affidavits of Defendants Purther and Rubin, which state that Plaintiff's predecessor in interest represented the term "outstanding Loan balance" meant the amount left unpaid after efforts to collect from the LLC debtor had been exhausted.

Here, because the Court finds the language of the Guaranty is unambiguous and caselaw establishes that "unambiguous contracts are not open to judicial construction and must be enforced as written," the guaranty must be enforced without regard to parol evidence. *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468 (2005). Parol evidence of contract negotiations that contradicts the written contract "is not admissible to vary the terms of a contract that is clear and unambiguous." *UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 492 (1998). Therefore, the Guarantors' affidavits may not be considered as evidence.

Moreover, the Guaranty contains an integration and merger clause which states that the Guaranty can only be changed or waived by an instrument "in writing" and specifies that the Guaranty "constitutes the entire agreement between the Guarantors and Lender and all prior negations are merged herein." Under Michigan law, when such an integration

clause is included in a written contract, "it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud...or where an agreement is obviously incomplete 'on its face.'" *UAW-GM*, 228 Mich. App. at 502. *Klapp* is distinguishable from the instant case because there was no integration and merger clause. The fraud exception is inapplicable under the circumstances and the Guarantors have not argued that the Guaranty is incomplete.

Finally, MICH. COMP. LAWS § 566.132(2) (1992), Michigan's Statute of Frauds, bars enforcement of the purported verbal accommodation. Under MICH. COMP. LAWS § 566.132(2), any alleged promise or commitment by a financial institution to make a financial accommodation is unenforceable unless the agreement is in writing and signed by an authorized member of the financial institution. No such document exists here. For all of the foregoing reasons, the Guarantors' argument that they may rely on parol evidence is without merit.

### 3. Attorney's Fees

The Defendants allege that Plaintiff's claim for attorney fees is unreasonable and is therefore subject for review at an evidentiary hearing. *Crawley v. Schick*, 48 Mich. App. 728, 737 (1973); *see Wilson v. Gen. Motors Corp.,* 183 Mich. App. 21, 42-43 (1990). Defendants consequently request that the Court schedule an evidentiary hearing to determine whether or not the award is warranted, and require that Plaintiff supply the Court with any billings or other evidence that would allow it to conduct a meaningful review of the amounts requested.

This Court must use the "lodestar" method to determine the appropriate amount of attorney fees. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). This

method requires a finding of "the proven number of hours reasonably expended on the case by an attorney, multiplied by his [] court-ascertained reasonable hourly rate." *Gratz v. Bollinger*, 353 F.Supp. 2d 929, 937 (E.D. Mich. 2005). "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). "The party seeking an award of attorney fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Gratz*, 353 F.Supp.2d at 937. Plaintiff has provided the affidavit of C. David Bargamian, which more than sufficiently establishes that Plaintiff's attorneys billed a reasonable hourly rate. *See* Dkt. No. 20-7. However, the affidavit does not include a billing record. Consequently, the Court is unable to discern if the amount of time Plaintiff's attorneys billed was reasonable because it is unable to examine what work was performed.

The Guaranty caused the Guarantors to be responsible for any remaining indebtedness. The Guaranty also contains requirements for interest on the unpaid principal, default interests on the unpaid principal, and late payments. It is an undisputed fact that the Borrowers defaulted under the Loan. Consequently, per the language of the Guaranty, the Guarantors are responsible for 50% of the outstanding loan balance as well as any associated attorney fees and expenses. In Michigan, a contractual agreement for the payment of reasonable attorney fees is valid and enforceable. *Sentry Ins. v. Lardner Elevator Co.*, 153 Mich. App. 317 (1986). Additionally, Plaintiff has established by affidavit

the amount and reasonableness of its costs and attorney fees incurred. Defendants, however, have not submitted any specific admissible facts to challenge the reasonableness of the fees, nor have they submitted an affidavit under Fed. R. Civ. P. 56(d).

### 4. Plaintiff's Duty to Offset Costs

Finally, the Guarantors argue that Plaintiff should, and could, take actions to offset costs of the outstanding Loan balance. The "outstanding loan balance" is a number that changes daily by interest, by receipt of payments and by the sale of the property in question. Currently, there is an executed purchase agreement for the mortgaged property which would result in a recovery for Plaintiff and substantially reduce the outstanding loan balance.

Contrary to the Guarantors' arguments, they are not entitled to offset costs. While they have asserted a number of affirmative defenses, none of them have any merit. Under the Guaranty, Plaintiff had no duty to mitigate damages. The amounts due under the Guaranty are not affected by Plaintiff's exercise or failure to exercise any of its rights against the Borrower. The explicit terms of the Guaranty provide that the Guarantors absolutely and unconditionally guaranteed the payment of the Loan when due and agreed that Plaintiff could demand payment directly and without "pursuing or exhausting any remedy or instituting any proceedings against Borrower or any other person, or against any assets of Borrower or any security held by Lender." When a guarantor provides an absolute guaranty of payment, the lender has no duty to first proceed against the primary obligor or against its collateral upon a default and may instead proceed directly against the guarantor to recover the amount owed. *Crown Life Ins. Co. v. Hicks*, 1994 U.S. Dist. LEXIS 5563 (E.D. Mich. 1994); *See also Resolution Trust Corporation v. Townsend Associates Limited*

*Partnership*, 840 F. Supp. 1127 (E.D. Mich 1993); *Brodsky v. Lehigh Valley Ind., Inc.* 424 F. Supp. 863 (E.D. Mich. 1976); *Aiton v. Slater*, 298 Mich. 469, 479 (1941).

In *Comerica Bank v. Cohen*, 291 Mich. App. 40 (2010), the defendant executed a guarantee under which he unconditionally and absolutely agreed to pay 30% of the remaining debt and plaintiff was not required to attempt to mitigate damages. Additionally, the *Comerica Bank* court determined that even if the plaintiff was able to collect money through foreclosure, he would not be required to offset those funds against the money due from the defendant, unless the payment would result in recovery of more than 100% of the indebtedness. *Id*. Like *Comerica Bank*, the Guaranty in the instant case is one of "payment and not of collection" and it provides that the Guarantors' liability for payment is absolute and unconditional, regardless of the release of any portion of the Mortgaged Property. Furthermore, under the Guaranty, the Guarantors specifically waived "any set-offs or counterclaims against the Lender which would otherwise impair Lender's rights against the Guarantors." As in *Comerica Bank*, the explicit terms of the Guaranty defeat the defenses offered here.

**IV.    CONCLUSION**

For the reasons state above, the Court will GRANT Plaintiff's Motion for Summary Judgment [#20] in the amount of $691,386.48 as of February 10, 2014.[2]

It is further ordered that the Plaintiff submit its breakdown of hours spent on the case, as well as the expenses incurred, which will be added to the Judgment above. That

---

[2] At the oral argument on the motion the Plaintiff produced a document reflecting 50% of the Outstanding Loan Balance plus the per diem, equaling $691,386.48, as of February 10, 2014.

must be submitted within 7 days of this Order. If Defendant has any objections to the Plaintiff's submission, they must be filed within 7 days of the submission.

SO ORDERED.

Dated: February 13, 2014       /s/Gershwin A Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 13, 2014, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk